WATKINS, Judge:
Annette K. Morgan, who was employed at Hunt Correctional Center, St. Gabriel, Louisiana, was removed from her position as Correctional Security Officer II. The letter of dismissal held her responsible for the escape of an inmate. She appealed to the Civil Service Commission. The Commission, after reviewing the record and exhibits (including a sound recording of testimony taken before a referee), ordered that Ms. Morgan be reinstated in her position with back pay.
On the night of February 16, 1981, Ms. Morgan was a guard on Tower 13 on the 2:00 p.m. to 10:00 p.m. shift. A roll call count taken that evening at 8:00 p.m. revealed that one inmate was missing. A search was instituted both inside and outside the facility, but the escaped inmate was never found. Footprints were found inside the facility leading to the fence between Tower 12 and Tower 13, and the razor wire at the top of the fence between those towers was found bent down.
Ms. Morgan testified that between 5:30 and 6:30 p.m. she noticed a fog rolling in from the swamp north of the institution. She further testified that she heard noises about 6:30 p.m. and, as she was required to do, sought permission from the control center to use the spotlight; however, such permission was denied. She later testified that it was 7:30 or 7:45 p.m. before she sought permission to use the spotlight. In any event, acting without having obtained permission, Ms. Morgan turned on the spotlight and determined that the noises were coming from a water tank located outside the fence.
Ms. Morgan’s testimony concerning the presence of fog in the area was corroborated by Yvonne Griner (guard at Tower 8) and Pamela Haddan (guard at Tower 14). They testified that a heavy fog rolled in from the north about 6:00 p.m. and prevented a view of the prison fence from their towers or any view from one tower to another. In addition, they testified that the fog disappeared about 9:00 p.m. or 9:30 p.m., just when additional personnel were arriving at the facility because of the escape. It was brought out during the hearing that Ms. Griner is Ms. Morgan’s sister, and that all three of the women rode to work together.
All three women admitted using the telephone quite frequently for purposes other than official duty while in their respective towers. Ms. Morgan admitted that making such calls was a violation of the rules.
The witnesses who testified on behalf of the Department of Corrections were unanimous in denying that there was any fog on the night of the escape. Mary Wells, the control center operator, testified that she received no reports of visibility problems. Robert Delaune, the shift supervisor, testified he observed no fog during the 2:00-10:00 p.m. shift and received no reports of foggy conditions from tower personnel. Ivy, Deville, who was acting captain of Compound 2, the compound in which Ms. Morgan was stationed, testified that he was both inside and outside of Compound 2 on the night of the escape, but he observed no fog. Janice Dickerson, the guard in Tower 1, testified the weather was misty but visibility was not impaired. Mary Wells, the control center operator, further testified that she received no call from the control towers seeking permission to use a spotlight. All prison personnel flatly deny that the guards were required to obtain central control’s permission to use the spotlight.
The opinion of the Civil Service Commission reached from a record made before a referee does not stand on the same footing as the decision of a trial court, as the Civil Service Commission unlike a trial court' considers the cold record and cannot observe the demeanor of witnesses. For that reason, the manifest error rule of Canter v. Koehring Company, 283 So.2d 716 (La.1973), and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) does not apply. In the case sub judice, the hearing was held before a referee, and the Commission reviewed the record. In such instances, the appellate *787 court may make an independent review of the record to determine whether or not the conclusion of the Commission is arbitrary, capricious, or manifestly wrong. Wollerson v. Department of Agriculture, 436 So.2d 1241 (La.App. 1st Cir.1983).
After reviewing the full record, we find the conclusion of the Civil Service Commission that Ms. Morgan was prevented from seeing the escape by fog was the result of an arbitrary and capricious analysis of the record. The opinion of the Commissioner does not discuss certain facts which we deem pertinent. No mention is made of the possible bias of the witnesses who corroborated Ms. Morgan’s testimony. No mention is made of the testimony of the witnesses for the Department of Corrections who all categorically denied the presence of fog. No mention is made of Ms. Morgan’s admission that she violated the rules by making numerous personal telephone calls while on duty. Additionally, the Commission failed to acknowledge that guards were permitted to exercise independent judgment in using the spotlight.
After reviewing the record, we find that the evidence establishes that Ms. Morgan was inattentive to her duties, permitting an inmate to escape. Ms. Morgan was entrusted with the responsibility of protecting society from the possibility that an inmate might escape and do harm. She violated that responsibility. We hold that the finding of the Civil Service Commission reinstating Ms. Morgan was arbitrary, capricious, and clearly wrong. Therefore, we order her dismissal as originally directed in the letter of termination. All costs shall be paid by Annette K. Morgan.
REVERSED AND RENDERED.